UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TROY A. BORRIE,                      )   Case No. EDCV 08-1234-OP
                                     )
                    Plaintiff,       )
                                     )   MEMORANDUM OPINION; ORDER
          v.                         )
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security,                            )
                                     )
                    Defendant.       )
                                     )

          The Court[1] now rules as follows with respect to the disputed issues listed in

the Joint Stipulation ("JS")[2].

/ / /

_____

          [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 7, 8.)

          [2] As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record, and the Joint Stipulation filed by the parties.  In
accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
determined which party is entitled to judgment under the standards set forth in 42
U.S.C. § 405(g).

# I.
## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.  Whether the ALJ properly considered the relevant medical evidence of record; and

2.  Whether the ALJ properly considered Plaintiff's subjective complaints and properly assessed Plaintiff's credibility.

(JS at 3.)

# II.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

///

2

**III.**

**DISCUSSION**

**A.**   **The ALJ Properly Considered the Relevant Medical Evidence of Record.**

Plaintiff contends the ALJ failed to provide sufficient reasons for disregarding much of the relevant medical evidence of record.  (JS at 3.)

**1.**   **Failure to Consider Global Assessment of Functioning Score.**

Plaintiff contends the ALJ rejected the Global Assessment of Functioning ("GAF") score of 40[3], assessed by a social worker, without providing specific and legitimate reasons for doing so.  (Id.; see also AR at 21, 304.)

In his report, after setting forth the GAF scores assessed by various practitioners, the ALJ specifically stated that he did not find GAF scores to be reliable:

> There are GAF assessments in the file, as indicated above, but these are of limited value. Although the DSM-IV gives some descriptions that can be followed in defining a GAF score, there is no evidence to indicate the reliability of cross raters where one can conclude a particular GAF score means a particular limitation in work ability.  Although it indicates some limitations in functioning, it does not speak directly to a person's work capacity.

(AR at 23.)

Preliminarily, a social worker is not generally considered to be an acceptable medical source.  See 20 C.F.R. § 404.1513(d) (including social worker

---

[3] A GAF score of 40 is described as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Diagnostic and Statistical Manual of Mental Disorders - Revised 34 (American Psychiatric Ass'n ed., 4th ed. 2000).

1    as an "other" medical source).  Because a social worker is not an acceptable

2    medical source, evidence from the social worker is not considered relevant

3    medical evidence.  Id.  The ALJ may, but is not required to, use evidence from

4    such other sources to show the severity of an impairment.  Id.

5         Further, GAF scores only reflect the "clinician's judgment of the

6    individual's overall level of functioning and include[] psychological, social and

7    occupational functioning."  Diagnostic and Statistical Manual of Mental Disorders

8    - Revised 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000).  They are not

9    meant to be a conclusive medical assessment of overall functioning, but rather, are

10   only intended to be "useful in planning treatment[,] . . . measuring its impact, and

11   in predicting outcome."  Id.  The Social Security regulations do not require an

12   ALJ to take the GAF score into account in determining the extent of an

13   individual's disability.  While the score may help the ALJ assess the claimant's

14   ability to work, it is not essential, and even an ALJ's failure to mention the GAF

15   score does not constitute an improper application of the law.  Howard v. Comm'r

16   of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of

17   considerable help to the ALJ in formulating the [residual functional capacity

18   ("RFC")], it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to

19   reference the GAF score in the RFC, standing alone, does not make the RFC

20   inaccurate.").

21        Here, the ALJ considered the GAF score, but finding such scores unreliable,

22   did not find it mandated disability.  (AR at 23.)  This is a specific and legitimate

23   reason for discounting this score.  Moreover, since the ALJ is not required to take

24   the GAF score into account in determining disability or even to mention it, the

25   ALJ's failure to reconcile this low GAF score with the other GAF scores in the

26   record or with other medical opinions, does not make the RFC inaccurate.

27   Howard, 276 F.3d at 241.  Thus, there was no error requiring remand.        **2.**

28

1

**Failure to Consider Plaintiff's Chronic Fatigue.**

2

Plaintiff maintains that the ALJ failed to properly consider his severe and

3

chronic fatigue. (JS at 5.) Plaintiff contends that he consistently complained of

4

severe fatigue,[4] and the medical expert, Dr. Nafoosi, also testified to fatigue as a

5

symptom of Plaintiff's Hepatitis C disorder. (Id.)

6

However, after considering fatigue as a symptom, Dr. Nafoosi found an

7

even higher physical exertional capacity than the ALJ. (AR at 18.) In fact, the

8

ALJ, in deference to Plaintiff's subjective complaints of fatigue and the medical

9

expert's suggestion, actually reduced the exertional level to sedentary. (Id.) Thus,

10

the ALJ did properly consider Plaintiff's chronic fatigue.

11

Based on the foregoing, the Court finds that the ALJ properly considered

12

the relevant medical evidence of record as well as Plaintiff's chronic fatigue.

13

Thus, there was no error.

14

**B.    The ALJ Properly Considered Plaintiff's Subjective Complaints and**

15

**Properly Assessed Plaintiff's Credibility.**

16

Plaintiff contends that the ALJ failed to provide specific and legitimate

17

reasons for rejecting Plaintiff's subjective complaints of fatigue and weakness.

18

(JS at 10.) Plaintiff further contends the ALJ failed to properly assess Plaintiff's

19

credibility. (Id.)

20

An ALJ's credibility finding must be properly supported by the record and

21

sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily

22

reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-

23

47 (9th Cir. 1991). An ALJ's assessment of pain severity and claimant credibility

24

is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

25

1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When an ALJ's

26

_____

27

[4] The ALJ's rejection of Plaintiff's subjective complaints of fatigue is

28

discussed in further detail below in the second claim.

disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

It is well established that when a claimant has produced objective medical evidence of an impairment or impairments that could reasonably be expected to produce some degree of pain and/or other symptoms and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell, 947 F.2d at 343; Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).  Further, it is incumbent on the ALJ to specify which statements by a claimant concerning his symptoms and functional limitations were not credible and/or in what respect(s) the claimant's statements were not credible.  See Smolen, 80 F.3d at 1284; see also Social Security Ruling ("SSR") 96-7p (requiring that the ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record," and that the decision "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284; see also Soc. Sec. Ruling 96-7p.

Here, even though Plaintiff had not produced objective medical evidence, the ALJ stated clear and convincing reasons for discounting Plaintiff's credibility and subjective complaints based on evidence of daily activities that were inconsistent with his subjective complaints, additional inconsistent statements made by Plaintiff, and the medical opinion of other treating and consulting physicians.

As to Plaintiff's inconsistent statements, the ALJ provided:

The claimant's testimony and reports regarding his history of heroin abuse are inconsistent. On January 27, 1997, the claimant said he quit taking heroin one week prior when he entered a Methadone detoxification program. On November 6, 2001, the claimant said he quit taking heroin in 1990. On December 11, 2001, the claimant said he had a history of taking heroin for 15 years. . . . During the November 1, 2005 psychiatric consultative examination, the claimant said he had not used speed or heroin for five years, which would have been the year 2000. On September 13, 2007, the claimant said he last used it 3 years ago. The claimant told this to the mental health technician, and he later told it to the psychiatrist who saw him. This is consistent with what he told another treating source on October 2, 2007, when the claimant said he last used intravenous drugs three years ago. Yet, at the hearing and under oath, the claimant denied making such statements and said it had been at least 10 years since he used heroin.

7

1    (AR at 22 (citations omitted).)

2        Relying upon Plaintiff's own description of his daily activities, the ALJ

3    found Plaintiff not to be a credible witness and discredited the severity of his

4    subjective complaints.  (Id.)  According to Plaintiff's own statements and

5    testimony, he was able to perform household chores including laundry, dishes,

6    cleaning, yard work, gardening, cooking, making snacks, dressing and bathing

7    himself, shopping, and running errands.  (Id.)  The Court notes that the ALJ could

8    properly rely on Plaintiff's daily activities, such as completing household chores

9    and working side jobs, to support his adverse credibility determination.  See, e.g.,

10   Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between

11   claimant's testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d

12   595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between

13   claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel,

14   161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability

15   undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d

16   748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities,

17   including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ

18   may properly rely on daily activities inconsistent with claim of disabling pain);

19   SSR 96-7p.  Additionally, the ALJ found Plaintiff was able to engage in

20   substantial gainful activity because on several occasions, Plaintiff reported that he

21   was working part time.  (AR at 22.)

22        Finally, none of the treating or examining physicians, including the medical

23   experts and the consulting psychiatrist, suggested any greater limitations than

24   those found by the ALJ.  Neither of the medical experts found any severe

25   limitations.  (Id. at 18, 20.)  In fact, Dr. Nafoosi found greater functional capacity

26   than that found by the ALJ.  (Id. at 18, 392-98.)  Dr. Smith, the psychiatrist, did

27   not find any severe mental impairment.  (Id. at 21, 248-56.)  The consultative

28

8

examiner, Dr. Jamil, also reported Plaintiff could walk, sit and stand for six hours in a eight-hour workday and was capable of lifting and carrying up to fifty pounds occasionally.  (Id. at 19, 22, 261.)  These medical opinions also constituted clear and convincing reasons for rejecting Plaintiff's subjective complaints and discounting his credibility.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's subjective symptoms of fatigue and weakness, and discounting Plaintiff's credibility.  Thus, there was no error.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.


Dated: August 19, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge

9